**Dated: June 28, 2011**
**The following is ORDERED:**

_____
**Jennie D. Latta**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION
_____

In re
LONNY WORLEY,                                  Case No. 04-23704-L
    Debtor.                                    Chapter 13
_____

**ORDER DENYING MOTION TO RECLAIM PROPERTY
AND DIRECTING FURTHER CASE ADMINISTRATION**
_____

THE DEBTOR'S MOTION TO RECLAIM PROPERTY came before the court for hearing on June 9, 2011. The Debtor seeks the return of $5,311.83 from the Clerk of the Bankruptcy Court which represents funds that the Chapter 13 trustee unsuccessfully attempted to pay to one of the Debtor's creditors. Rather than redistributing those funds to the remaining creditors, the Trustee paid them over to the Bankruptcy Court Clerk. At the close of the hearing, the court invited counsel for the Debtor and for the Chapter 13 trustee to briefly address the issues raised by the Debtor's motion. Nancy Rigell, attorney for the Chapter 13 trustee, timely submitted a memorandum indicating that the Trustee now believes that the case should be reopened and the funds distributed

to other creditors.  Stephen N. Douglass, attorney for the Debtor, also submitted a memorandum.

## FACTS

The Debtor filed his voluntary petition under Chapter 13 of the Bankruptcy Code on March 8, 2004.  The case was randomly assigned to the undersigned judge and to George W. Stevenson, standing Chapter 13 trustee.  Mr. Stevenson's involvement was terminated on November 6, 2006, and Sylvia Ford Brown was assigned to the case as Chapter 13 trustee.

The Debtor's plan was confirmed on July 19, 2004.  It provided for payment of a claim to Memphis New Holland, Inc. in the amount of $7,439.54, to be treated as an unsecured claim.  Dkt. No. 39.  The plan provided for payments of $520 weekly, that unsecured creditors were to be paid 100% of their claims, and that the plan would terminate in approximately 60 months.  Memphis New Holland was not listed in the Debtor's schedules.  *See* Dkt. No. 11.  No proof of claim appears for Memphis New Holland, Inc. in the Claims Register, but the attorney for the Chapter 13 trustee provided the court with a copy of a proof of claim that bears the stamp of the United States Bankruptcy Court, received on March 26, 2004, in the amount of $7,439.54.  An administrative order allowing a number of claims, including that of Memphis New Holland, Inc., was entered on July 26, 2004.  Dkt. No. 41.

On October 19, 2004, however, a consent order was entered pursuant to which "New Holland Credit Company" was allowed a fully secured claim in the amount of $29,482.88, to be added to the plan and paid together with interest at 6.9% in a monthly amount to be determined by the Chapter 13 trustee.  Dkt. No. 61.  The consent order recites that the claim arose out of a retail installment contract and security agreement dated July 25, 2000, with the Debtor and Johnny Worley as co-

makers, and that Johnny Worley was a debtor in a chapter 13 case pending before another bankruptcy judge of this district. A proof of claim was filed by New Holland Credit Company, at an address in Racine, Wisconsin, signed by local attorney Benjamin T. Wages, on October 12, 2004. The claim is in the amount of $29,482.88. There is an indication that it is secured, but no supporting documentation is attached. Claim. No. 12. The court cannot tell how or whether this claim is related to the unsecured claim set up in the confirmed plan for Memphis New Holland, Inc.

The memorandum filed by the attorney for Sylvia Ford Brown indicates that a disbursement was attempted to Memphis New Holland, Inc. on February 10, 2009, at an address on Getwell Road in Memphis. The check was returned to the trustee as "not deliverable as addressed." The memorandum indicates that the claim was marked as being on "reserve" which permitted the Trustee to accumulate future disbursements intended for this creditor.[1]

On February 13, 2009, the Trustee filed a motion to dismiss the case for nonpayment. The Debtor responded with a motion to reduce the percentage to be paid to unsecured creditors to what had been paid. The Debtor's motion was eventually granted. *See* Dkt. Nos. 118, 122, and 156. Shortly thereafter, the Debtor's discharge was entered and the Trustee made her final accounting. The attorney for the Trustee indicates that in connection with this final accounting, the Trustee prepared a check in the amount of $5,311.83, which represented the funds that she had accumulated for the claim of Memphis New Holland, Inc., and mailed the check to an unspecified address. The attorney further states that this check was returned and held by the Trustee until August 31, 2010, at which time it was "stale dated" and the unclaimed funds paid over to the Bankruptcy Court Clerk.

---

[1] The court notes that these are factual statements made by Nancy Rigell, an employee of the Trustee, but not in the form of an affidavit. Without objection, the court will treat the statements made by Mrs. Rigell as true.

The Debtor filed his "Motion to Reclaim Property" on November 24, 2010. The hearing on the application was continued by consent for a number of times until it was finally heard by the court on June 9, 2011. The Debtor seeks recovery of the $5,311.83 paid over to the Bankruptcy Court Clerk by the Chapter 13 trustee.

## ANALYSIS

The resolution of this dispute turns on the language of the plan as confirmed and by the Order Granting Motion to Reduce Payments to Unsecured Creditors to Percentage Paid to Permit Discharge, together with the requirements of the Bankruptcy Code. The plan as confirmed called for payment of an amount capable of calculation, $520.00 per week for "approximately" 60 months - $135,200.[2] The confirmed plan also called for payment of 100% of the claims of unsecured creditors in addition to the payments that were to be made to secured and priority creditors. The confirmed plan called for payment of priority claims in amounts unspecified in the plan, but listed in Schedule E in the amount of $44,842.88; secured claims in the amount of $42,000; unsecured claims in the amount of $241,800.15; the filing fee; an unspecified trustee fee; and an attorney fee in the amount of $1,500.[3]

Shortly after Ms. Brown was appointed Chapter 13 trustee in this case, she filed a motion to modify the plan to increase the plan payments. Dkt. No. 106. The Debtor apparently did not object and was ordered to begin paying $876.00 per week beginning August 18, 2007. Dkt. No. 108.

---

[2] $520/wk*52wks/yr*5yrs = $135,200.

[3] The plan as confirmed called for payments of $135,200.00 against claims in the amount of $297,643.03 together with administrative fees. This judge routinely relies upon the recommendation of the Chapter 13 trustee in confirming plans and does not independently review them unless an objection is brought before the court for hearing.

The Debtor was not able to make these increased payments; and the Trustee filed her motion to dismiss for failure to pay on February 13, 2009, which resulted in the Debtor's motion and reduction of the percentage to be paid to unsecured creditors to that already paid.

The Trustee's final report shows that $189,072.00 was paid by the Debtor. Of that amount, $11,700.20 was paid to the Trustee and to the Debtor's attorney; $102,923.97 was paid to secured creditors; $37,093.33 was paid to priority unsecured creditors; and $37,093.33 was paid to general unsecured creditors against allowed claims of $51,949.99. The percentage paid to unsecured creditors was 71.40%, not the 100% promised in the confirmed plan.[4]

The final report reflects the payment made to Memphis New Holland, Inc., in the amount of $5,311.83, which was later returned as undeliverable. That is, those funds were received by the Trustee and treated as disbursed by her in her final report. The Order Granting Motion to Reduce Payments to Unsecured Creditors to Percentage Paid to Permit Discharge directs that "the amount owing to unsecured creditors shall be reduced to the amount paid through the date of the entry of this Order." Dkt. No. 156. This order is capable of two interpretations. It could mean that "the amount owing to unsecured creditors shall be reduced to the amount paid *to them* through the date of the entry of this Order," or in the alternative that "the amount owing to unsecured creditors shall be reduced to the amount paid *to the Trustee by the Debtor* through the date of the entry of this Order."

The court believes that the second reading more appropriately reflects the obligations of the Debtor and the practicalities flowing from the modification of the plan. It was the obligation of the Debtor to pay his unsecured creditors in full pursuant to the terms of the confirmed plan. 11 U.S.C.

---

[4] $37,093.33/$51,949.99 = .7140199.

§ 1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor.").[5] Modification of a plan after confirmation is permitted only as provided at section 1329 of the Bankruptcy Code. That section permits modification prior to the completion of payments under a plan to, among other things, increase or reduce the amount of payments on claims of a particular class provided for by the plan. 11 U.S.C. § 1329(a). The modification in this case was made pursuant to that section for it reduced the amount to be paid to creditors in the unsecured class. It is clear, however, that the modification did not reduce that amount to what had already been paid to the creditors, for the Trustee's final report and her memorandum reflect that payments were made to creditors *after* the entry of the order reducing payments. Further, it could not have reduced the payments to what had already been paid to the creditors without running afoul of section 1329(a), which only permits modification *prior* to the completion of payments under the plan. Under the terms of the order, the Trustee was to administer whatever funds had already been paid in by the Debtor in conformity with the plan as modified. That is, after payment of any remaining administrative expenses, the Trustee was to complete the payments under the plan as modified by paying the net balance to the unsecured creditors on a pro rata basis. The amount that they were to receive under the plan was reduced from 100% to whatever percentage could be paid from the funds on hand when the order was entered. The percentage to be paid was not set by the order modifying the plan. That percentage could only be known when all remaining administrative claims were paid and the balance distributed to the unsecured creditors. Had the Debtor wished a different treatment, the order might have specified that the plan be modified to provide that the amount owed to the class of unsecured creditors be

---

[5] The petition in this case was filed before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. References to the Bankruptcy Code refer to the provisions of Title 11 preceding the amendments resulting from BAPCPA.

reduced to the amount *already received by them.* But if this had been the language of the motion, it could not have been granted because it would have requested a modification after the completion of all payments under the plan.

Under the terms of the plan as modified, the unsecured creditors were entitled to the benefit of all payments made by the Debtor through the date of the entry of the order reducing payments to unsecured creditors. The Debtor has no claim to the funds paid over to the Bankruptcy Court Clerk. They were paid by him to the Trustee with the intention that they be paid to his creditors. The creditors have not been paid in full. Thus, the balance held by the Bankruptcy Court Clerk should be returned to the Chapter 13 trustee for distribution to the Debtor's creditors.

## CONCLUSION AND ORDER

For the foregoing reasons, the Bankruptcy Court Clerk is directed to administratively reopen this closed bankruptcy case and to pay over to Sylvia Ford Brown, Trustee, the sum of $5,311.83, which is to be distributed by her pro rata to the unsecured creditors provided for in the Debtor's confirmed plan. Any funds that are returned should be redistributed to creditors. Only in the event that none of the Debtor's unsecured creditors can be located shall the remaining balance be returned to the Debtor. Upon completion of this distribution, the Trustee shall file a revised Final Report and the case may again be administratively closed.


cc:  Debtor
     Attorney for Debtor
     Chapter 13 Trustee
     Attorney for Chapter 13 Trustee